In the Matter of AMERICAN LOCKER COMPANY, INC., Petitioner, *v.* NORMAN GALLMAN et al., Constituting the State Tax ·Commission, Respondents.

Third Department, January 20, 1972.

*Cravath, Swaine & Moore* (*Ralph L. McAfee, George G. Tyler, Paul M. Dodyk, William J. Turnier* and *Robert M. Entwisle* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *Ruth Kessler Toch* of counsel), for respondents.

GREENBLOTT, J. This is a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission.

Petitioner is the owner of patented, coin-controlled lockers in which baggage and other articles of personal property are stored by the public. The lockers, which are manufactured to comprise cabinet units of several permanently attached lockers on top of each other, are placed primarily in air, bus and railroad terminals in accordance with various contracts with the owners and lessees of the premises on which the lockers are to be installed. The contracts, which are drawn as leases in bulk, are typically for periods of five years and obligate the owners or lessees (hereinafter referred to as operators) to make the lockers available for the storage of baggage.

The use of the locker is quite simple. After selecting an available locker, each of which has its key in the lock, the patron places the item to be stored inside, inserts, depending upon the size of the locker, a dime, two dimes or a quarter into the indicated slot, closes the door and turns and removes the key, thereby locking the door. The key, which bears a number corresponding to the number on the locker door, permits the patron to reopen the locker and retrieve his belongings at any time within 24 hours. Once reopened, the locker may only be locked again upon payment of the required fee, even if the 24-hour period has not elapsed. If a locker is occupied for more than 24 hours, the patron's belongings are removed by an employee of the operator and may be retrieved only upon payment of an overtime charge.

In addition to removing the belongings and collecting the charges in an overtime situation, the operator cleans the lockers and handles emergencies, customer complaints and lost key problems. It also collects the receipts from the lockers, after which a certain percentage of the gross revenues is paid to petitioner (there is no requirement that a special account be used). In sum, the operator handles the daily operation of the lockers. Petitioner, being responsible for the functioning of the lockers, indemnifies the operators if any losses occur. As to tax liability, the various contracts (except the Embarkation Casual Center Fund contract) provide that any taxes (except personal property taxes) levied or assessed on the conduct, maintenance, operation, gross receipts or revenue of the locker service are borne by the petitioner and each operator in the same percentage as the gross revenues are shared.

A notice of determination and demand dated October 25, 1966 was issued against petitioner for sales tax due on all revenues flowing through the lockers (not just the percentage petitioner received) for the period from August 1, 1965 through February 28, 1966. Although petitioner has filed sales and use tax returns for this period, no taxable sales were reported. Petitioner, under protest, paid the $29,785.67 claimed due (tax, penalty and interest charges). An informal hearing was held, followed by a formal hearing in August, 1967. By a determination dated April 29, 1970, the Tax Commissioner determined that petitioner, as the vendor, was principally engaged in the business of storing tangible personal property not held for sale in the regular course of business and that the receipts from these services were taxable sales of services within the meaning and intent of paragraph (4) of subdivision (c) of section 1105 of article 28 of the Tax Law.

Petitioner contends: (1) that it is not engaged in the " storage " of tangible property; (2) that it is not involved in the " rental of safe deposit boxes or similar space "; (3) that to impose the sales tax upon the use of petitioner's lockers would constitute an unconstitutional interference with interstate commerce; (4) that its revenues are derived from sales for resale and are therefore exempt; (5) that those revenues derived from sales by governmental and charitable organizations are exempt from the sales tax; and (6) that even if a tax should have been imposed and collected, it was not the vendor and is therefore not liable for such tax.

Section 1105 (subd. [c], par. [4]) provides that a tax is imposed and shall be paid upon the " receipts from every sale,

except for resale ", of the service of " storing all tangible personal property not held for sale in the regular course of business and the rental of safe deposit boxes or similar space ". It is immediately observed that if the rental of space is not construed as being storage, the receipts would not be taxable (unless construed as being rental of safe deposit boxes or similar space). Therefore, petitioner first contends that the rental of space here is " checking ", which should be distinguished from " storing ". We see no valid distinction between the two for the purpose of the section, and the cases cited by petitioner (e.g., *Matter of Monument Garage Corp.* v. *Levy,* 266 N. Y. 339; *Kelemen* v. *American Locker Co.,* 182 Misc. 1058) are inapposite. The term " storing " within the meaning of section 1105 (subd. [c], par. [4]) does not necessarily connote such duration as to preclude its application here, and there is no reason to limit its application to long-term custody. Mindful of the requirement that the provision here should be strictly construed in favor of the taxpayer (see *Bathrick Enterprises* v. *Murphy,* 27 A D 2d 215, affd. 23 N Y 2d 664), it is our opinion that when a patron deposits his tangible personal property within one of petitioner's lockers, he is storing his property, albeit such storage is only for a limited duration. That such a distinction is more illusory than real is apparent from the language of the cases discussing petitioner's lockers (compare *American Locker Co.* v. *City of New York,* 308 N. Y. 264, 266 and *Kelemen* v. *American Locker Co., supra,* with *Bathrick Enterprises* v. *Murphy, supra*). We are convinced that within the meaning of the section involved, the short-term " checking " of baggage here present is storage of tangible personal property.

Having reached this conclusion, it is unnecessary to consider petitioner's second contention, although we note that respondent does not contend that there is here a rental of safe-deposit boxes or other similar space.

There is no merit to petitioner's third argument. A sales tax on the use of locker storage facilities does not amount to an unconstitutional burden on interstate commerce and freedom to travel. Nor is there any merit to petitioner's contention that the contractual agreements between petitioner and the various operators create sales for resale.

Petitioner's fifth contention must also be rejected. As to the governmental agencies, section 1101 (subd. [b], par. [8], subpar. [i], cl. [E]) of the Tax Law, in order not to give State and local governments an unfair advantage in the market place, specifically provides that the State of New York, its agencies and political subdivisions are to be considered vendors when

such an entity sells services or property of a kind ordinarily sold by a private person (see, also, Tax Law, § 1116, subd. [a], par. [1]). As for any charitable organization upon whose premises the lockers are located, there has been no showing that an exemption under section 1116 of the Tax Law would be authorized.*

It is the vendor of the service involved who is responsible for the collection of the sales tax and who is liable for the tax imposed (Tax Law, § 1131, subd. [1]; §§ 1132, 1133). Therefore, having determined that the receipts received for the storage of baggage and other tangible property in petitioner's lockers are subject to the sales tax imposed by section 1105 of the Tax Law, we must determine whether petitioner is the vendor and therefore liable for the collection and payment of the tax. The statute defines a vendor as including one who makes " sales of tangible personal property or services " (§ 1101, subd. [b], par. [8], subpar. [i], cl. [A]) or one " who solicits business either by employees, independent contractors, agents or other representatives  *   *   *   and by reason thereof makes sales  *   *   *  of tangible personal property or services " (§ 1101, subd. [b], par. [8], subpar. [i], cl. [C]). The contractual relationships established between petitioner and the various operators are of the type encompassed by the above definition and petitioner, rather than the operators, is the vendor. It is unnecessary for us to further define the relationship established in the present record.

The determination should be confirmed, with costs, and the petition dismissed.

HERLIHY, P. J., COOKE, SWEENEY and SIMONS, JJ., concur.

Determination confirmed, with costs, and petition dismissed.

---

* We additionally note that any exemption granted by section 1116 to a government agency or charitable organization is granted only where the sale is " by or to " such agency or organization. This was not the case here since we have determined that petitioner is the vendor (see discussion, *infra*). Petitioner, as the vendor, cannot claim any such exemption.